UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| FERNANDO VERDE, Individually on behalf of all putative class members,<br><br>Plaintiff,<br><br>V.<br><br>STONERIDGE, INC., an Ohio Corporation; Stoneridge CONTROL DEVICES, INC. f/k/a Joseph Pollak Corp; and FTE AUTOMOTIVE USA, INC., a Michigan Corporation;<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 6:14-cv-00225-KNM |

**PLAINTIFF'S RESPONSE TO DEFENDANT STONERIDGE, INC. MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND PETITION FOR CLASS CERTIFICATION**

Plaintiff, Fernando Verde, files this Response to Defendant Stoneridge, Inc. ("Stoneridge") Motion to Dismiss Plaintiff's Second amended Complaint and Petition for Class Certification [Dkt # 107]. For the reasons stated below, the Court should deny Stoneridge's motion.

## I. Factual Background

Verde initiated this consumer warranty class action after learning that an important safety device installed in thousands of vehicles, including his own, contains a defect that makes it unfit for its intended purpose and requires immediate replacement at significant owner expense. FTE supplied a device to Chrysler and likely other vehicle manufacturers known as a Clutch Safety Interlock Device (CSID). Stoneridge designed

and manufactured the device. The CSID was installed in a large vehicle population during the 1990's and 2000's. The device in question acts to interrupt the ignition circuit in manual transmission vehicles when the clutch is not fully depressed. This important safety system prevents inadvertent start-up of a manual transmission engine which is frequently left in gear and can lunge or move forward once started. The device contains a defect which prevents its operation and allows manual transmission vehicles to start-up without the clutch depressed. This defect is latent or hidden because an unsuspecting consumer would have no ordinary reason to test whether their vehicle will start-up without the clutch depressed. A vehicle owner could drive with a failed CSID for years without learning of its failure until tragic events unfold.

Fernando Verde first discovered the existence of a defect in the CSID in his vehicle when one of his young children was able to start-up his 2006 Dodge Ram 3500 diesel truck without the clutch depressed and the vehicle ran over and killed his young daughter. These tragic events led to a case filed in this District by the deceased child's estate, two bystanders, and the various Texas wrongful death statutory beneficiaries asserting products liability theories. That case – the "products case" – seeks wrongful death damages arising from the child's death. This case, in contrast, involves only the vehicle owner, Fernando Verde, and seeks to certify a class of other similarly situated vehicle owners. Also, this case only seeks economic loss damages associated with replacing the defective device and arises from the replacement of the subject product.

Mr. Verde provided notice to the Defendants and afforded them an opportunity to investigate and cure. Ultimately, Mr. Verde was required to incur the financial costs

of replacing the defective device in his vehicle. It appears there are thousands of other consumers similarly situated to Verde and who will incur similar economic loss. The National Highway Traffic Safety Administration (NHTSA) has opened a formal investigation based on reports of the same defect in some 110,000 other Chrysler vehicles equipped with the defective CSID. On December 16, 2014, Chrysler implemented a voluntary recall of certain 2006-07 manual transmission vehicles, including Mr. Verde's vehicle. Chrysler offered to either replace the CSID for free or reimburse owners some unspecified costs incurred in repairing the switch. Nevertheless, the recall does not fully compensate Mr. Verde, and because the recall only covers vehicles produced over one year, there are thousands of members of the putative class that are still unknowingly operating these vehicles with defective CSIDs that are unfit to perform their intended purpose.

## II. Argument and Authorities

### A. Standard of review

Under the liberal pleading approach of the Federal Rules, plaintiffs are only required to make a short and plain statement of their claim showing that they are entitled to relief. *See* FED. R. CIV. P. 8. Rule 8 mandates only notice pleading, which does not require plaintiffs to affirmatively plead facts satisfying the entire evidentiary framework of their claims. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely

consistent with unlawful conduct are insufficient. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 566–69 (2007). "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999). As Judge Leonard Davis has recognized, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Joao Bock Transaction Sys. of Texas, LLC v. AT & T, Inc.*, 6:09CV208, 2010 WL 5343173 (E.D. Tex. Mar. 29, 2010).

**B. Verde's claims are do not violate the rule against claim splitting.**

Stoneridge first contends that Verde's claim violates the rule against claim splitting. District courts have discretion to control their dockets by dismissing duplicative cases. *See Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("As between federal district courts ... though no precise rule has evolved, the general principle is to avoid duplicative litigation."). Long ago, the Supreme Court captured the general principle regarding claim-splitting:

> When the pendency of a [previously filed] suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon

> the same facts, and the title, or essential basis, of the relief sought must be the same.

*The Haytian Republic*, 154 U.S. 118, 124, 14 S. Ct. 992, 38 L.Ed. 930 (1894) (quotation omitted).[1] The claim splitting doctrine is akin to *res judicata* and is designed to prevent parties from getting two bites of the apple in two separate cases. That is far from what is involved here because this case is a distinct proceeding from the products liability wrongful death case related to Leihlany Verde's death. This case involves different parties, different theories of liability, and different claims for damages than the products liability case. The factual basis for the warranty claims asserted in this case arose upon discovery of the failed device and the damages arose when Verde incurred the costs to replace the part. This claim can and likely would be tried with no discussion regarding wrongful death damages. Moreover, the definition of defect used in this warranty claim would be entirely different than that used in the products case and would confuse any jury attempting to decide all the claims jointly.

Stoneridge's reliance on *Super Van Inc. v. City of San Antonio* is misguided. There, the Fifth Circuit adopted one of several exceptions to the *res judicata* doctrine recognized in Restatement (Second) Judgments § 26. *Super Van Inc. v. City of San Antonio*, 92 F.3d 366, 370-71 (5th Cir. 1996). Under this exception, a defendant waives the right to rely on the doctrine in a later case if it agrees or acquiesces to the splitting

---

[1]*See also Curtis v. Citibank, N.A.,* 226 F.3d 133, 139 (2d Cir.2000) ("[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."); *Hartsel,* 296 F.3d at 986 (collecting cases) ("We have noted that 'more recent cases analyze claim-splitting as an aspect of res judicata.'"); *Stone v. *1218 Dep't of Aviation,* 453 F.3d 1271, 1278 (10th Cir. 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common law rule of claim preclusion prohibiting the splitting of actions.").

of claims. *Id.* at 371. The purpose of this exception is to prevent dishonest behavior by defendants seeking to gain an unfair tactical advantage. *Id.* The Court did not hold that this is the only basis a district court can permit two cases arising from the same set of operative facts to proceed simultaneously.

Whether a case should be dismissed for claim splitting remains a matter of docket management that rests within the discretion of the Court. *Ameritox, Ltd. v. Aegis Sciences Corp.*, Cause No. 3:08-CV-1168-D, 2009 WL 305874 at *5 (N.D. Tex. 2009) (unpublished) (citing 18 Charles Alan Wright, et al., *Federal Practice and Procedure* § 4406, at 30 (Supp.2008)). This Court is free to manage its docket as it sees fit, and it makes little or no sense to consolidate this class action warranty case with a wrongful death case wherein the majority of claims and parties are dissimilar. Here, the salient facts related to the breach of implied warranty claim relate to the defective nature of the subject device. Specifically, the evidence here would show whether the product was unfit for its intended purpose, as opposed to the unreasonably dangerous standard applicable to a products liability claim. Evidence that has no bearing on the warranty claims would be before the Court and jury in the wrongful death case and vice versa. The two cases were filed separately not for purposes of obtaining two bites at the apple. Rather, these two proceedings involve unique parties, claims, and issues that do not belong in the same cause.

**C. Verde's claims are not moot.**

Stoneridge next argues that Verde's claims are moot because Chrysler has issued a voluntary recall of the CSID and offered to reimburse some unidentified costs incurred in repairing the problem. Specifically, the Chrysler recall notice states:

> Chrysler has a long standing policy and practice of reimbursing owners who have incurred the cost of repairing a problem that subsequently becomes the subject of a field action. To ensure consistency, Chrysler, as part of the owner letter, will request customers send the original receipt and/or other adequate proof of payment to the company for confirmation of that expense.

*See* Exhibit A to FTE's Motion at 4 (Doc. 106-1). Arrow contends that this paragraph offers Verde all of the relief he has requested and that his claims are, therefore, moot. Arrow is incorrect.

The mootness doctrine arises out of the standing requirements of Article III of the United States Constitution. Article III limits the jurisdiction of federal courts to actual cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1. One requirement for an actual case or controversy to exist is that the parties seeking to invoke federal-court jurisdiction must have a legally cognizable interest or personal stake in the outcome of the case. *See Payne v. Progressive Fin. Srvs., Inc.*, 748 F.3d 605, 607 (5th Cir. 2014) (citing *Genesis Healthcare Corp. v. Symczyk*, __ U.S. __, 133 S. Ct. 1523, 1528, 185 L. Ed. 2d 636 (2013)). "If intervening circumstances deprives a plaintiff of a personal stake in the outcome of the action or makes it impossible for the court to grant any effectual relief whatever to the prevailing party, the case must be dismissed as moot." *Payne*, 748 F.3d at 607 (citing *Chafin v. Chafin*, __ U.S. __, 133 S. Ct. 1017, 1023, 185 L. Ed. 2d 1 (2013)).

However, an incomplete offer that does not meet the plaintiff's full demand for relief does not render the plaintiff's claims moot. *Payne*, 748 F.3d at 607. Absent a full offer of relief, the plaintiff retains a stake in the outcome of the action and a live controversy remains.[2] *Payne*, 748 F.3d at 607-08.

Here, Verde's claims are not moot because Chrysler has not offered the full relief sought in this litigation. For one, it is not clear what relief Chrysler has offered. Chrysler states that, consistent with prior practice, it intends to "reimburse[e] owners who have incurred the cost of repairing," but Chrysler does not identify what expenses will be reimbursed. Chrysler also states that it will do so if customers "send the original receipt and/or other adequate proof of payment to the company." Chrysler's offer is, therefore, not an unconditional offer of all relief that Verde seeks, but an offer to reimburse some expenses to be determined by Chrysler if Verde has evidence that Chrysler deems sufficient to substantiate the expense. Consequently, no specific offer has been made that could possibly moot Verde's claims.

Additionally, the alleged offer does not meet Verde's full demand. In Verde's Second Amended Complaint, Verde seeks damages for the following:

- Economic loss;
- Diminished value of the clutch interlock switch;
- Diminished value of the vehicle;
- Incidental damages associated with inspecting and replacing the defective clutch interlock switch;

[2] To be clear, the Fifth Circuit has not decided whether a complete offer of judgment would render a claim moot. *Payne*, 748 F.3d at 607-08 n.1. It has only determined that an offer of something less than full relief does not render a case moot.

- Damage to the clutch hydraulic assembly caused by the defective switch;
- Attorney's fees; and
- Court costs

*See* Second Amended Complaint at ¶ 58-59. While the recall notice indicates that Chrysler is willing to reimburse Verde for some unidentified expenses incurred in replacing the defective switch, nothing in the notice suggests that Chrysler is willing to reimburse Verde for diminished value of the switch or vehicle, incidental damages, damage to the clutch hydraulic assembly, attorney's fees, or court costs. Verde's claims, therefore, are not moot. *Payne*, 748 F.3d at 607.

An argument similar to Arrow's was rejected by the court in *Picton v. Excel Group, Inc.*, 192 F. Supp. C.R. 2d 706 (E.D. Tex. 2001). There, the plaintiff asserted a claim against his employer that the employer's mischaracterized per diem payments in violation of the Fair Labor Standards Act, which allowed the defendant to pay a lower overtime rate and caused the plaintiff to file an incorrect tax return. *Id.* at 708-09. Shortly after the plaintiff filed suit, the defendant sent a letter to plaintiff's counsel including a revised W-2 properly characterizing the per diem payments and offering to pay for an amended tax return. *Id.* at 710. The defendant then filed a motion for summary judgment based, in part, on mootness. *Id.* The court rejected the defendant's argument because the offer was not "'the exact relief requested.'" *Id.* The plaintiff also sought statutory attorneys' fees, liquidated damages, and other damages, which were not addressed by the offer. Consequently, the plaintiff's claims were not moot. *Id.*

The present case is no different. Even assuming that the recall notice constitutes an offer, it does not offer the full relief sought by Verde. At most, Chrysler offers to reimburse expenses related to repairing the clutch interlock switch. It does not offer to pay for diminished value of the switch or vehicle, incidental damages, damages to the clutch hydraulic system, attorney's fees, or court costs. Verde's claims, therefore, are not moot.

**D. Verde stated a valid claim for breach of warranty.**

Stoneridge next argues that Verde failed to state a claim for breach of warranty because Verde is not a third-party beneficiary to the warranty provided by Stoneridge and the arbitration and venue provisions govern any express warranty claims. Neither argument supports Stoneridge's motion to dismiss.

**1. Verde and the other putative class members are express third party beneficiaries of the warranty provided by Stoneridge.**

For one, Verde and other consumers are intended third party beneficiaries of the express warranty in the supplier agreement between FTE and Stoneridge. As noted in the Second Amended Complaint, Stoneridge and FTE entered into a contract for the production of the CSID, which included a warranty by Stoneridge that the product would be merchantable, of good material and workmanship, free from defects and, fit and sufficient for the purposes intended. *See* Second Amended Complaint at ¶ 44. Importantly, this provision specifically stated that the warranty would survive any subsequent sales or purchases of the clutch interlock switch, and the parties agreed that

the warranty would benefit purchases and end users of the switch. Specifically, Stoneridge's warranty provides as follows:

> 8. Warranties. Seller warrants that the Goods will conform to applicable specifications, instructions, agreed upon measurement and layout criteria, drawings, data, and samples, will be merchantable, will be of good material and workmanship and free from defects, that the Goods will be fit and sufficient for the purposes intended, if such intent is known to Seller, and that the Goods will be free from all liens, encumbrances, and patent, trademark, copyright, trade secret, or other intellectual property right infringement or claims. These warranties are in addition to all other warranties, express or implied, and survive acceptance of and payment for the Goods by Buyer, its successors, assigns, customers, and users of its products. The warranties of Seller will not be excluded or limited in any manner whatsoever unless expressly authorized in writing by the President of Buyer. Seller also represents and warrants that the prices for the Goods will be no less favorable than those that Seller presently, or in the future, offers to any other customer for the same or similar goods or service for similar quantities. If Seller offers a lower price for the same or similar goods or services to any other customer during the term of the Purchase Order, then to the extent permitted by law, Seller will immediately offer Buyer the same price for the Supplies on the same terms and conditions as was offered to the other customer.

*See* Exhibit C to Stoneridge's Motion to Dismiss at 2 (Doc. 107-3). This is not the only time "users" of the product are mentioned in the agreement. As discussed more fully below, Stoneridge also agreed to indemnify "users of [FTE's] products . . . from all damages . . . arising out of or alleged to have resulted directly or indirectly from the Goods . . . ." *Id.* at 4-5. It is clear, therefore, that Stoneridge and FTE intended end users such as Verde and the other members of the putative class to benefit from the warranty and other protections afforded by this agreement.

Stoneridge first attempts to deny its obligation to Verde and similarly situated consumers by arguing that this provision is insufficient under Texas law to create a third party beneficiary status. Stoneridge errs in assuming that Texas law applies. Stoneridge and FTE specifically agreed that the rights and obligations created under the agreement would be governed by Michigan law. *See* Exhibit C to Stoneridge's Motion

to Dismiss at 5, ¶ 24 (Doc. 107-3). Michigan law, therefore, determines whether Verde is a third party beneficiary of the warranty provision.

Stoneridge may contest the application of Michigan law to this issue, but to do so would be misguided. A federal court sitting in diversity jurisdiction, as in this case, applies the choice of law rule for the state in which it is sitting. *Cherokee Pump & Equip. Inc. v. Aurora pump*, 38 F.3d 246, 250 (5th Cir. 1994). Under Texas law, whether a choice of law provision is enforceable is governed by § 187 of the Restatement (Second) of Conflicts of Law. *ExxonMobil Corp. v. Drennen*, __ S.W.3d __, Cause No. 12-0621, 2014 WL 4782974 at *3-4 (Tex. Nov. 6, 2014). Section 187(2) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187(2). Here, the choice of law provision governs because Michigan law has ample connection to the parties and the transaction. FTE is a Michigan company and the switch was made for use in vehicles that were made in Michigan. Given that the parties to the agreement intended Michigan law to govern the rights and responsibilities created by the agreement, and the nexus between

Michigan and performance of the agreement, it is readily evident that Michigan law governs the effect of the warranty provision.[3]

Under Michigan law, it is clear that Verde and the other putative class members are express third-party beneficiaries of the warranty given by Stoneridge. Section 600.1405 of the Michigan Compiled Laws provides that "Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as a promise." A promise is deemed to be for the benefit of a person "whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person." MICH. COMP. LAWS ANN. § 600.1405(1). A third party beneficiary may be a member of a class as long as the class is sufficiently described, and need not be readily ascertainable at the time the contract is executed. *Brunsell v. City of Zeeland*, 651 N.W.2d 293, 297-98 (Mich. 2002) (citations omitted).

Here, the warranty provided by Stoneridge specifically identified several classes of individuals that would benefit from the warranty by providing that the warranty would survive acceptance of and payment for the goods FTE and FTE's "successors, assigns, customers, and users of [FTE's] products." *See* Exhibit C to Stoneridge's Motion to Dismiss at 2 (Doc. 107-3) (emphasis added). This is not broad and undefined

[3] It does not follow that Michigan law necessarily governs the other claims at issue in this suit. "[U]nless a court finds that a valid choice of law clause governs all claims, it must evaluate each of the significant relationship factors in light other substantive issues presented in the case. The substantive issues determine which factors [the Court] must consider in determining which Stat has the most significant relationship. Texas law may apply to some claims, but not other claims." *Scottsdale Ins. Co. v. National Emergency Srvs., Inc.*, 175 S.W.3d 284, 291 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)).

class, but is limited to those individuals who are end users of FTE's clutch interlock switch. Moreover, the only possible purpose for expressly providing that the warranty survived the sale of the product to FTE's end users is so that the end users can also rely on Stoneridge's warranty that the product would be merchantable, of good material and workmanship, free from defects and, fit and sufficient for the purposes intended. This purpose is confirmed by the indemnity provision with further establishes that FTE and Stoneridge intended to afford end users protection against a defect in Stoneridge's product. Verde, therefore, has stated a valid claim as a third party beneficiary to Stoneridge's warranty.

**2. Neither an arbitration nor venue provision is a basis for dismissal of a case.**

Moreover, the existence of a venue or arbitration provision, even assuming it is binding, is not a basis for dismissal of a case. Not surprisingly, Stoneridge does not cite any cases that hold the existence of an arbitration or venue provision requires dismissal. If Stoneridge intended to assert the rights created by these provisions, one would expect it to request that the Court compel arbitration or to transfer venue, but it has not. If Stoneridge wishes to proceed in arbitration or to litigate this case in Michigan, it should ask the Court for that relief so the parties can fully brief the issue. The simple existence of these provisions, however, does not bear on whether Verde has stated a claim for which relief can be granted, and is, therefore, no reason to dismiss Verde's claim.

**E. Verde stated a valid claim for indemnitor liability.**

Stoneridge next contends that Verde lacks standing to assert an indemnity claim under the purchase agreement because Verde is neither a signatory nor a third-party beneficiary of the agreement. Again, Verde is a third party beneficiary. In fact, the indemnity agreement specifically agrees to indemnify a class of individuals that indisputably includes Verde. Specifically, Stoneridge expressly agreed to indemnify "users of [FTE's] products . . . from damages . . . arising out of or alleged to have resulted directly or indirectly from the Goods." *See* Exhibit C to Stoneridge's Motion to Dismiss at 4-5 (Doc. 107-3). This is exactly the relief that Verde seeks in this case: indemnity from the damages arising out of the defective product sold by Stoneridge. It is clear, therefore, that users of the CSID like Verde and the other class members are both third party beneficiaries and have standing to assert a claim under the indemnity provision in which they are expressly named.

**F. Alternatively, Verde should be afforded an opportunity to replead.**

Alternatively, if the Court determines that Stoneridge's motion should be granted, Verde should be afforded the opportunity to replead. "[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000). "A district court should 'freely give leave' to amend a complaint 'when justice so requires.'" *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). Leave is appropriate even after the trial court dismisses for failure to state a claim. *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 179-80 (5th Cir. 1977). "Although

a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart*, 199 F.3d at 248. This Fifth Circuit precedent makes it abundantly clear that plaintiffs like the Tracys are entitled to ample opportunity to meet the heighted federal pleading requirements.

The allegations at issue in Verde's complaint demonstrate that Stoneridge produced a defective part that requires repair and replacement in Verde's vehicle and in the thousands of vehicles owned by people like Verde. Assuming these allegations are true, Stoneridge has caused substantial damage to Verde and the other members of the putative class. To the extent that the Verde's Complaint is lacking in any way, the deviation from the federal pleading rules is minor, and Verde should not be denied an opportunity to be heard due to a simple, correctable technical pleading error. For these reasons, it would not be in the interest of substantial justice to dismiss any of Verde's claims without allowing leave to amend and doing so would violate federal law and well-established Fifth Circuit precedent. *See Steury*, 625 F.3d at 270; *Hart*, 199 F.3dat 248; *Griggs*, 563 F.2d at 179-80.

## III. Conclusion and Prayer

For the foregoing reasons, Verde respectfully requests that the Court deny Stoneridge's motion to dismiss. Alternatively, Verde requests that the Court provide Verde with the opportunity to amend to correct any defects in his pleadings. Finally, Verde requests all other relief to which he is entitled.

Respectfully submitted,

By: */s/ F. Leighton Durham, III*

F. Leighton Durham III
State Bar No. 24012569
Kirk L. Pittard
State Bar No. 24010313
Peter M. Kelly
State Bar. No. 00791011
**KELLY, DURHAM & PITTARD, LLP**
P.O. Box 224626
Dallas. Texas 75222
214-946-8000
214-946-8433 fax
ldurham@texasappeals.com
kpittard@texasappeals.com

and

Jeffrey T. Embry
State Bar No. 24002052
Attorney-in-Charge
George Cowden IV
State Bar No. 24071492
**HOSSLEY EMBRY, LLP**
320 S. Broadway Ave., Ste. 100
Tyler, Texas 75702
903-526-1772
903-526-1773 fax
jeff@hossleyembry.com
george@hossleyembry.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this *Response to Defendant Stoneridge, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint and Petition for Class Certification* has been forwarded to the following via the Federal Rules of Civil Procedure on this 27th day of February, 2015.

*/s/ F. Leighton Durham, III*
F. Leighton Durham, III