# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **FERNANDO VERDE, Individually** | § | |
| **and on behalf of putative class members,** | § | |
| | § | **CASE NO. 6:14-CV-225-KNM** |
| **Plaintiff,** | § | |
| | § | **JURY DEMANDED** |
| **v.** | § | |
| | § | |
| **STONERIDGE, INC.,** *et al.* | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## REPORT AND RECOMMENDATION

On February 3, 2015, Defendants FTE Automotive USA, Inc. ("FTE") and Stoneridge, Inc. ("Stoneridge") filed separate Motions to Dismiss Plaintiff's Second Amended Complaint and Petition for Class Certification (Doc. Nos. 106 & 107), and Defendant Arrow Manufacturing Co. ("Arrow") filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Doc. No 108).  For the reasons below, the Court recommends FTE's and Stoneridge's Motions be **DENIED** and Arrow's Motion be **GRANTED** on 12(b)(6) grounds.

## BACKGROUND

Mr. Verde filed two lawsuits currently pending before the Court.  Both suits arise out of an accident caused by an allegedly defective part in Mr. Verde's 2006 Dodge Ram pickup manufactured by Old Carco LLC f/k/a Chrysler LLC ("Old Carco").  On August 25, 2013, Mr. Verde's four-year-old son started the manual-transmission truck without pressing the clutch. The truck moved forward and struck and killed Mr. Verde's infant daughter.  Mr. Verde first discovered the alleged defect through these events.

Mr. Verde filed the above-styled case on March 26, 2014.  Mr. Verde attributes the malfunction of the truck to a failure in the Clutch Safety Interlock Device ("CSID") manufactured and supplied to Old Carco by FTE and Stoneridge.  A key component of the CSID is an internal compression spring manufactured and supplied by Arrow.  The CSID is intended to prevent accidental startup and movement of manual transmission vehicles by breaking the electrical ignition circuit unless the clutch pedal is fully depressed while the ignition key is turned.

In December 2014, Chrysler submitted a Safety Recall Report to the National Highway Traffic Safety Administration ("NHTSA") that stated Chrysler will conduct a recall related to the CSID in vehicles and model years including Mr. Verde's truck.  Later that month, the NHTSA sent Chrysler a letter confirming that the recall will proceed according to the Recall Report and pursuant to federal law.   The NHTSA makes information about the recall available to public on its website.[1]

## **Applicable Law**

### *Mootness*

Federal Rule of Civil Procedure 12(b)(1) is the procedural mechanism for challenging a court's subject matter jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528, (2013) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982); *Liverpool, New York & Philadelphia S.S. Co. v. Comm'rs*

---

[1]  Doc. No. 107 Exhibit A, Part 573 Safety Recall Report, and Exhibit B, the NHTSA Letter, are available on the NHTSA website.

*of Emigration*, 113 U.S. 33, 39 (1885)) (internal quotation marks omitted); U.S. Const. art. III, §

2, cl. 1.  A plaintiff must show a "legally cognizable interest or personal stake" in the outcome of

the case.  *Id.*  The controversy must exist through "all stages of review, not merely at the time the

complaint is filed."  *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)

(internal quotation marks omitted).  If an intervening circumstance during litigation deprives the

plaintiff of a personal stake in the outcome, the case must be dismissed as moot.  *Id.*

Courts analyze Rule 12(b)(1) motions to dismiss under the same standard as a motion to

dismiss under Rule 12(b)(6).  *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143

F.3d 1006, 1010 (5th Cir. 1998).  A lack of subject matter jurisdiction can be found in (1) the

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Ramming*, 281 F.3d at 161.  The burden of proof for a Rule 12(b)(1) motion rests on the party

asserting jurisdiction.  *Id.*  In examining the motion, a court is empowered to consider disputed

factual matters.  *Id.*  Conversely, undisputed facts present in the record are accepted as true.  *See

id.*  Ultimately, a Rule 12(b)(1) motion should be granted only if it appears certain that the

plaintiff cannot prove any set of facts in support of her claim entitling her to relief.  *Id.*

However, when jurisdiction rests on a disputed fact issue, the court reviews the parties'

submitted evidentiary materials, and the plaintiff must prove that the facts supporting jurisdiction

are true by a preponderance of the evidence.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th

Cir. 1981).

### Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) is the procedural mechanism for challenging a

complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

Regional circuit law applies to motions to dismiss for failure to state a claim.  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007). The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  *Id.* at 1356 (internal quotations omitted); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679–680, 684 (2009) (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Rule 8).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000).  Likewise' documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  Additionally, it is "proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

## DISCUSSION

### *Mootness*

Defendants[2] ask the Court to dismiss the case for lack of subject matter jurisdiction because, according to them, the case is now moot.  Defendants argue that Chrysler's NHTSA-supervised recall renders Mr. Verde's claims moot, and Chrysler offers to reimburse Mr. Verde for the money spent repairing the allegedly defective part.  Doc. No. 106 at 10.  According to Defendants, Chrysler has agreed to inspect and repair/replace any defective clutch interlock switches and reimburse owners for costs incurred for repair.  Doc No. 107 at 14.  Defendants assert that other federal courts have found a NHTSA-supervised recall to remedy an alleged vehicle defect moots a plaintiff's claim to the same remedy as relief.  Doc. No. 106 at 11–12 (citing *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210–11 (10th Cir. 2012); *Hadley v. Chrysler Grp. LLC*, No. 13-13665, 2014 WL 988962, at *1, *5 (E.D. Mich. Mar. 13, 2014); *Cheng v. BMW of North America, LLC*, No. CV 12-09262, 2013 WL 3940815, at *2 (C.D. Cal. Jul 26, 2013)).  Further, Defendants assert that Mr. Verde's claims beyond what the recall will cover are unspecified and devoid of supporting factual allegations or details.  Doc. No. 128 at 9.

Mr. Verde responds that an incomplete offer that does not meet plaintiff's full demand does not render claims moot.  Doc No. 120 at 20 (citing *Payne v. Progressive Fin. Srvs., Inc.,* 748 F.3d 605, 607 (5th Cir. 2014)).  According to Mr. Verde, Chrysler has not offered the full relief sought because: (1) it has not identified what expenses will be reimbursed; and (2) it requires the customer to send its receipt and adequate proof of payment.  Therefore, Mr. Verde asserts Chrysler's offer is conditional based on its own determination of whether Mr. Verde's evidence sufficiently substantiates the expense.  *Id.*  Mr. Verde cites *Picton v. Excel*, 192 F. Supp.

---

[2]  All three moving Defendants raised mootness as grounds for dismissal.

2d 706 (E.D. Tex. 2001), for the proposition that the Court must deny a motion to dismiss for mootness unless the exact relief requested is offered.  *Id.* at 21.

If the court is capable of granting relief sought that is beyond the scope of a defendant's offer, the plaintiff maintains a personal stake in the outcome, and a "live controversy" remains. *Payne*, 748 F.3d at 607.  In *Payne*, the Fifth Circuit found that the plaintiff's request for "actual damages" that exceeded the amount the defendant offered left a live controversy for the court to resolve. *Id.* at 607–08.  The Fifth Circuit reversed the district court, which held that an offer of judgment mooted the plaintiff's claims because she did not plead sufficient facts to support her claim for "actual damages" not covered by the offer.  *Id.*  The court of appeals distinguished two separate inquiries: "(1) the merits, whether [the plaintiff] sufficiently stated a claim; and (2) jurisdiction, whether the court has the power to reach the merits of [the plaintiff's] claim"— mootness.  *Id.* at 608 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

The present action is analogous to the Fifth Circuit's controlling precedent in *Payne*. Here, Mr. Verde's Second Amended Complaint seeks recovery for "economic loss, diminished value of the clutch interlock switch and the vehicle in which it is installed, and incidental damages associated with inspecting and replacing the defective clutch interlock switch. Moreover, the defective clutch interlock switch damaged the clutch hydraulic assembly in Plaintiff's vehicle and required its replacement."  Doc. No. 97 ¶ 58.  Chrysler's December 2014 Recall Report states the following Description of the Remedy:[3]

> • Chrysler will conduct a voluntary safety recall to replace the clutch ignition interlock switch on all affected vehicles.
> • Chrysler has a longstanding policy and practice of reimbursing owners who have incurred the cost of repairing a problem that subsequently becomes the subject of a field action. To ensure consistency, Chrysler, as part of the owner

---

[3]  Pursuant to FTE's unopposed request, the Court takes judicial notice of Doc. No. 106, Ex. A, Part 573 Safety Recall Report and Doc. No 106, Ex. B, NHTSA Letter, which are publically available.  The same documents are also Exs. A & B to Doc. No. 107.

letter, will request that customers send the original receipt and/or other adequate proof of payment to the company for confirmation of the expense.

Part 573 Safety Recall Report, Doc. No. 106, Ex. A at 3.

The Recall Report does not provide for the exact relief requested by Mr. Verde. The complaint seeks additional relief such as the diminished value of the vehicle, incidental damages, and replacement of the entire clutch hydraulic assembly. The Report's language makes reimbursement for replacement conditional on Chrysler's approval of the expenses by requiring proof of payment for conformation of expenses incurred. In addition, the Recall Report only explicitly includes replacement or reimbursement for the clutch interlock switch itself, potentially excluding incidental or other damages associated with Mr. Verde's vehicle repair. At this stage of litigation and the recall process, it is too early to determine that Mr. Verde's claims are moot such that the Court lacks jurisdiction, regardless of whether he pleads facts to support his claims for damages not covered by the recall. *See Payne*, 748 F.3d at 608. Therefore, just as in *Payne*, a live controversy remains because Mr. Verde seeks recovery that exceeds what Chrysler offers in the recall.

***Claim Splitting***

Defendants[4] also move to dismiss on the ground that Mr. Verde improperly split his claims between this lawsuit and earlier-filed products liability and wrongful death suit. Defendants assert that Mr. Verde cannot bring multiple lawsuits arising out of the same transaction or incident. Doc. No. 108 at 9 (citing *Matter of Super Van, Inc. v. City of San Antonio*, 92 F.3d 366, 370–71 (5th Cir. 1996)); Doc. No. 107 at 10 (citing *LaCroix v. Marshall City, Miss.*, 409 F. App'x 794, 801 (5th Cir. 2011) (affirming the district court's dismissal of claims as res judicata). Defendants argue that Mr. Verde split his claims into two lawsuits in an

---

[4] All three moving Defendants raised claim-splitting as a ground for dismissal.

attempt to become the class representative in this action.  Doc. No. 106 at 2.  Further, Defendants argue that the Court must not allow Mr. Verde to split his claims because they arise out of a single wrong.  Doc. No. 108 at 10 (citing *Ameritox, Ltd. v. Aegis Sciences, Corp.,* 2009 WL 305874, at *4 (N.D. Tex. Feb. 9, 2009).  Defendants contend that the rule against claim-splitting is not simply discretionary or otherwise within the Court's power to manage its docket.  Doc. No. 106 at 9.  Further, Defendants maintain that Mr. Verde could not be certified as the class representative because he split personal injury and warranty claims.  Doc. No. 128 at 3.

Mr. Verde responds that this case is distinct from the products liability and wrongful death case related to the accident that caused his daughter's death.  According to Mr. Verde, the factual basis for the warranty claim in this case arose after discovery of the failed device and damages arose from the costs incurred for replacement.  Doc. No. 120 at 17.  Mr. Verde contends that the Court retains discretion to dismiss a case for claim splitting as a matter of docket management but is not required to do so.  *Id.* at 18 (citing *Ameritox,* 2009 WL 305874 at *5).  Mr. Verde argues that evidence in this case would be unrelated to the evidence in the wrongful death case.  *Id.*

### Whether Dismissal is Discretionary

As an initial matter, a central issue in the parties' dispute is whether the rule against claim splitting requires mandatory dismissal or the decision to dismiss falls within the Court's discretion.  Federal Rule of Civil Procedure 18 allows a party to join claims it may have against another party in a single lawsuit, but it does not require joinder of all claims: "A party asserting a claim, counterclaim, crossclaim, or third-party claim *may* join, as independent or alternative claims, as many claims as it has against an opposing party."  FED. R. CIV. P. 18 (a) (emphasis

added).  The rule is permissive.  *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2014 WL 4693068, at *4 (E.D. La. Sept. 22, 2014).

However, the Fifth Circuit has recognized that res judicata bars litigating claims that "could and should" have been brought in an earlier suit where a court of competent jurisdiction renders a final judgment on the merits.  *Super Van Inc.*, 92 F.3d at 371.  A main purpose of the rule against a plaintiff splitting his claims into multiple lawsuits is to protect defendants from harassment by repetitive litigation.  *Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996).  In this context, the pendency of a previously filed suit defeats another if the cases are the same— involving the same parties or interests and asserted rights—and the relief sought must be founded upon the same facts.  *Katz v. Gerardi*, 655 F.3d 1212, 1217–19 (10th Cir. 2011) (quoting *The Haytian Republic*, 154 U.S. 118, 124, (1894)).  The requirement that the litigation "involve the same claim premised upon the same body of operative fact as was previously adjudicated" comports with the prohibition against claim-splitting protected by res judicata.[5]  *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 589 (5th Cir. 2006) (citing *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 234 (Miss. 2005)).

In limited circumstances, the Fifth Circuit has applied the claim splitting rule where there is no final judgment.  *See Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358 (5th Cir. 1996); *Oliney v. Gardner,* 771 F.2d 856 (5th Cir.1985)).  Traditional claim preclusion analysis requires a final judgment, but it is not required for the purposes of claim splitting.  *Katz*, 655 F.3d at 1218.  Claim splitting and res judicata both promote judicial economy and shield parties from "vexatious concurrent or duplicative litigation." *Id.*  But, claim-

---

[5]   To determine what constitutes the same "claim" or "cause of action" the Fifth Circuit applies the "same transaction" test and considers whether the claims are "based on the 'same nucleus of operative fact.'"  *F.D.I.C. v. Nelson*, 19 F.3d 15 (5th Cir. 1994) (citing *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992)).

splitting focuses on the "district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments." *Id.* (citing Wright & Miller, 18A Federal Practice & Procedure Jurisdiction § 4406 (2d ed. 2011) (calling it an "exaggeration" to describe claim splitting as an aspect of res judicata)). The rule against claim-splitting also rests on principals of comity and sound judicial administration. *Ameritox*, 2009 WL 305874, at *4 n.4. The rule operates "to avoid the waste of duplication, rulings that may trench upon the authority of other courts, and piecemeal resolution of issues that call for a uniform result." *Id.* Under the rule against claim-splitting, the court may dismiss a claim if it arises out of the same wrong (or transaction) as a first-filed claim. *Id.*

Accordingly, the Court retains discretion to control its docket by dismissing duplicative cases. *See Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976); *see also Katz*, 655 F.3d at 1217–19 ("Courts are enabled to manage their dockets and dispense with duplicative litigation."). A court may dismiss a plaintiff's second complaint when it alleges the same cause of action as a prior, pending, related action. *Friends of the Earth*, 95 F.3d at 362 (finding no error in the court's dismissal of a second complaint as duplicative) (quoting *Oliney*, 771 F.2d at 859)

**Mr. Verde's Claims**

Courts often apply the rule against claim splitting to prevent a plaintiff from filing a new lawsuit after its request for leave to amend an earlier-filed complaint has been denied. *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008) (finding that the plaintiff sought to circumvent the court's decision to deny leave to amend the complaint in an earlier suit); *Ameritox*, 2009 WL 305874, at *5 ("On the same day Ameritox's motion for leave to amend was denied by the Southern District of Florida, it filed this action

asserting the very same Lanham Act claim that it sought unsuccessfully to add in the Florida action"). However, class actions are "one of the recognized exceptions to the rule against claim-splitting." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) (citing 18 *Moore's Federal Practice* § 131.40[3][e][iii] (2002); *see also Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009) ("The doctrine of claim splitting generally does not apply to class actions.") (citing 18 Moore's Federal Practice § 131.40[3][e][iii] (2002) (citing Restatement (Second) of Judgments § 26(1)(c) (1982))).

Dismissal of this action is not required under the rule against claim splitting.  Federal Rule of Civil Procedure 18 does not impose a strict requirement on Mr. Verde to bring all possible claims in one action.  Additionally, other courts recognize an exception to the rule against claim splitting for class actions and the discretion entrusted to the Court to manage its own docket.  Here, many other potential plaintiffs with warranty claims but without personal injuries may exist, so filing a separate class action suit provides members of the putative class a chance for relief.  Because this Court will oversee both suits, there are no comity concerns or risks of rulings that will trench upon the authority of other courts. Further, various case management devices remain available to the Court to ensure efficient use of party and judicial resources.

Moreover, although Mr. Verde's warranty claims can generally be described as arising out of the truck accident, this does not establish that Mr. Verde has improperly split his claims. *Deepwater Horizon*, 2014 WL 4693068, at *5.  At least some of the facts and legal sources related to Defendants' alleged warranty and indemnification obligations differ from those regarding Defendants' responsibility for the truck accident and its effects.  For example, in this action, the basis for certain claims is alleged contractual obligations.  The Court must analyze

11

contractual language to determine whether Mr. Verde and putative class members may be entitled to the benefit of any of Defendants' contractual warranty or indemnification obligations.

Much of Defendants' argument focuses on Mr. Verde's adequacy as a lead plaintiff. Defendants cite several cases that indicate a plaintiff with highly personalized injuries may not be an adequate lead plaintiff in a class action lawsuit. *See Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 203 (W.D. Tex. 2004); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002); *Western States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal.2002); *Thompson v. Am. Tobacco Co., Inc.*, 189 F.R.D. 544, 550 (D. Minn. 1999); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 606–07 (S.D.N.Y. 1982). Nevertheless, all of these cases are rulings on class certification and none mandate granting a motion to dismiss for improper claim-splitting. Determining Mr. Verde's adequacy as a class representative is a matter for another day and is not ripe at the pleadings stage. Accordingly, the Court declines to dismiss this action for improper claim splitting.

### *Failure to State a Claim*

Stonridge's and Arrow's Motions (Doc Nos. 107 & 108) to Dismiss include grounds of failure to state a plausible claim under FED. R. CIV. P. 12(b)(6). Each makes individualized arguments related to the alleged contractual agreements made between themselves and other Defendants.

#### Stoneridge

a.   Third Party Beneficiary

Stoneridge argues that Mr. Verde fails to state a valid claim for breach of express warranty because he is not a third-party beneficiary of the contract between FTE and

Stoneridge.[6]  Doc. No. 107 at 15.  Stoneridge contends that under either Texas or Michigan law (which Stoneridge asserts are almost identical on this issue), in order for a third-party to recover on a contract between two other parties, the contracting parties must explicitly intend to benefit third parties.  Doc. No. 107 at 16 (citing *Stine v. Stewart*, 80 S.W. 3d 586 (Tex. 2002)); Doc. No. 130 at 5 (citing *Johnson v. Doodson Ins. Brokerage of Tex.*, 1 F. Supp. 3d 776 (E.D. Mich. 2014)).  According to Stoneridge, Mr. Verde did not plead facts showing that the contract "clearly and fully express[es]" a third party benefit.  Doc. No.107 at 16 (quoting *Stine* at 589 (Tex. 2002)).  Stoneridge asserts that any reasonable doubt as to an intent to confer a direct third-party benefit necessarily causes the claim to fail.  *Id.* at 17 (citing *Haire v. Nathan Watson Co.*, 221 S.W.3d 293, 301 (Tex. App. 2007)).  Stoneridge points to the "the only provision that even arguably refers to third-parties":

> 8.  <u>Warranties</u>. Seller warrants that the Goods will conform to applicable specifications, instructions, agreed upon measurement and layout criteria, drawings, data, and samples, will be merchantable, will be of good material and workmanship and free from defects, that the Goods will be fit and sufficient for the purposes intended, if such intent is known to Seller, and that the Goods will be free from all liens, encumbrances, and patent, trademark, copyright, trade secret, or other intellectual property right infringement or claims. These warranties are in addition to all other warranties, express or implied, and *survive acceptance of and payment for the Goods by Buyer, its successors, assigns, customers, and users of its products*. The warranties of Seller will not be excluded or limited in any manner whatsoever unless expressly authorized in writing by the President of Buyer. Seller also represents and warrants that the prices for the Goods will be no less favorable than those that Seller presently, or in the future, offers to any other customer for the same or similar goods or service for similar quantities. If Seller offers a lower price for the same or similar goods or services to any other customer during the term of the Purchase Order, then to the extent permitted by law, Seller will immediately offer Buyer the same price for the Supplies or the same terms and conditions as was offered to the other customer.

---

[6] The Court considers Exhibit C, Purchase Order Terms and Conditions ("Purchase Order"), attached to Stoneridge's Motion to Dismiss because Mr. Verde refers to that contract in the Second Amended Complaint and it is central to his breach of express warranty claim.

*Id.* (quoting Ex. C ¶ 8) (emphasis added).   Stoneridge also points to the "Miscellaneous" provision of the Purchase Order Terms and Conditions that states in part, "[t]he Purchase Order and the Terms and Conditions will be *binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Id.* (quoting Ex. C ¶ 26) (emphasis in original).  Stoneridge argues these paragraphs provide clear and unambiguous language that Mr. Verde and other putative class members are not third-party beneficiaries of the contract.  *Id.*

Mr. Verde responds that the warranty provision specifically states that the warranty would survive any subsequent sales or purchases of the clutch interlock switch, and the parties agreed end users would benefit. Doc. No. 122 at 11.  Mr. Verde adds that the indemnification portion of the contract also contemplates end users.  *Id.*  (citing Doc. No. 107, Ex. C. ¶ 19). Additionally, Mr. Verde contends that Michigan law applies because of the contract's choice of law provision.  *Id.* (citing *ExxonMobil v. Drennen*, 452 S.W.3d 319, at 324–25 (Tex. 2014), *reh'g denied* (Feb. 27, 2015); Restatement (Second) of Conflicts of Laws § 187)).  According to Mr. Verde, he and other putative class members are third-party beneficiaries under Michigan law because the class is sufficiently described: "successors, assigns, customers, and users of [FTE's] products."  *Id.* at 13 (citing MICH. COMP. LAWS. § 600.1405(1)).

i.    Which Law Applies

The Court must determine what law to apply regarding third-party beneficiaries to a contract for the breach of express warranty claim.  *See, e.g. Johnson*, 1 F. Supp. 3d at 786 (E.D. Mich. 2014).  Under Fifth Circuit law, the Court must apply Texas choice-of-law rules. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994).  Texas choice-of-law rules dictate that courts should enforce a choice of law provision in a contract unless:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

*Exxon Mobil Corp*, 452 S.W.3d at 325 (Tex. 2014) (quoting Restatement (Second) of Conflicts of Laws § 187).

The Purchase Order agreement contains a choice-of-law provision that designates Michigan law.  Doc. No. 107, Ex. C ¶ 24.  Applying the Restatement, the provision governs the Court's choice of law unless the parties have no substantial relationship to Michigan or Michigan law is contrary to the fundamental policy of a state with a materially greater interest.  Here, one of the contracting parties, FTE, is a Michigan company and the subject-products of the contract were installed in vehicles manufactured in Michigan.  In Michigan and Texas—the state that may have a materially greater interest—laws regarding third-party beneficiaries are quite similar, and neither state's law conflicts with the fundamental policy of the other's.  *See Johnson*, 1 F. Supp. 3d at 787.  Accordingly, the Court applies Michigan law in determining whether Mr. Verde is an intended third-party beneficiary of the express warranty provision in the Purchase Order.

ii.     Whether Mr. Verde is an intended third-party beneficiary

Next, the Court must objectively determine if Mr. Verde is a third-party beneficiary under Michigan law.  Michigan law requires that a third-party be an intended beneficiary of a contract in order to enforce it.  *Id.*  A Michigan statute defines the rights of third party beneficiaries:

> Sec. 1405. Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.
> . . . .

MICH. COMP. LAWS § 600.1405.  A court should use an objective standard to determine whether the parties to the contract intended to make a third person a third-party beneficiary, *Dynamic Const. Co. v. Barton Malow Co.*, 543 N.W.2d 31, 33 (Mich. Ct. App. 1995).  "[T]he subjective intent of the parties is irrelevant."  *Riley v. Ameritech Corp.*, 147 F. Supp. 2d 762, 774 (E.D. Mich. 2001).  The contract must expressly include a benefit for a third-party to maintain a breach of contract action.  *Id.*  Any person that only incidentally benefits from the performance of a contractual duty has no rights under the contract.  *Id.*; *see also Kammer Asphalt Paving Co., Inc. v. East China Twp. Sch.,* 504 N.W.2d 635 (Mich. 1993) ("A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof.  Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited does not give him the right to sue for its breach.").  Additionally, a third-party beneficiary may be a member of a class as long as the class is sufficiently described and is less than the "entire universe, e.g. 'the public.'"  *Brunsell v. City of Zeeland*, 651 N.W.2d 388, 391 (Mich. 2002).

The Second Amended Complaint alleges that Stoneridge and FTE agreed that express warranties would benefit purchasers and users of the CSID.  Doc. No 97 ¶ 44.  The warranty provision expressly recites that the "warranties are in addition to all other warranties, express or implied, and survive acceptance of and payment for the Goods by Buyer, its successors, assigns, customers, and *users of its products*."  The Purchase Order includes a separate indemnification provision that similarly recites that Stoneridge:

agrees to indemnify and hold harmless Buyer, its successors, assigns, customers, and *users of its products* against all claims, suits at law or in equity, recall campaigns, or other corrective service actions and from all damages, claims, and demands, in any other manner arising out of or alleged to have resulted directly or indirectly from the Goods . . . .

Both provisions contemplate and explicitly refer to users of FTE's products.  If the other entities are removed from the language listing the indemnitees, the indemnity provision plainly inures a benefit to such users because it states "Stoneridge agrees to indemnify Buyer . . . and users of its products."

The warranty provision is less clear.  In Stoneridge's reading of the clause, it merely states that the benefit of the warranty provision survives acceptance of payment of the good but "clearly relates to *the buyer's* right to assert a warranty claim after selling the goods."  In Mr. Verde's reading, the provision "specifically stated that the warranty provision would survive subsequent sales or purchases of the clutch interlock switch, and the parties agreed the warranty would benefit purchase[r]s and end users of the switch."

Although the warranty provision is less clear, the more straightforward interpretation of the intent from reading that warranties survive "acceptance and payment for the Goods by Buyer. . . and users of its products," supports an intent to benefit users.  This interpretation is consistent with the plain language of the indemnification provision.  Nothing in the language of the warranty provision excludes such a benefit to the expressly named third-parties.

Moreover, to hold that only the buyer benefits from and retains rights in the warranty provision would render the separate indemnification clause superfluous.  It is unclear why a buyer would seek recovery under the breach of warranty provision for goods that it sold and no longer possesses other than if the buyer were seeking indemnification for claims against it. However, that scenario is covered by the Purchase Order's express indemnification provision.

The Court must "avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003).

The miscellaneous provision cited by Stoneridge includes various rights and duties that would naturally only pertain to a buyer and seller (or either's successors and assigns) such as importation duties or representations made relating to delivery of the goods.  Nothing in the miscellaneous provision can be read to preclude other provisions from inuring a benefit to third-parties.  Accordingly, the warranty provision is construed to include a promise to users of Stoneridge's products.

Although he is not a contracting party, Mr. Verde is not merely an incidental beneficiary.  Mr. Verde's injury did not simply result from the alleged breach of contract between FTE and Stoneridge.  He is an intended third-party beneficiary.  As an owner of a vehicle in which the CSID was installed, Mr. Verde is within the class sufficiently described in the Purchase Order as "users of [Stoneridge's] products."  Accordingly, Mr. Verde's claims against Stoneridge for breach of warranty should not be dismissed.

b.  Arbitration and Venue Provisions

Stoneridge contends that warranty claims are governed by the contract's arbitration and venue provisions, and thus, Verde's assertion of the express warranty claim is improper.  Doc. No. 107 at 18; Ex. C ¶¶ 24, 26.  Stoneridge argues that Mr. Verde's "attempt to cherry pick only certain provisions of the contract" supports that he is not an intended third-party beneficiary of the contract.  No. 107 at 18.  Mr. Verde responds that even if the arbitration and venue provisions applied, they do not merit granting a motion to dismiss for failure to state a claim.  Doc. No. 122 at 14.

Stoneridge does not affirmatively seek to compel arbitration or transfer venue.  Instead, Stoneridge argues that "[t]he venue and arbitration provisions are relevant to this Motion before this [C]ourt because they illustrate the absurdity of Plaintiff's latest theory of the case."  Doc. No. 130 at 8.  Stoneridge has not filed a motion to compel arbitration or transfer venue.  Although Mr. Verde cannot pick and choose only certain provisions of the contract, if Stoneridge seeks to enforce the arbitration or venue provisions, Stoneridge should file a motion to compel arbitration or transfer venue.  Simply raising the point that the contract contains arbitration and venue provisions to argue that Mr. Verde is not an intended third-party beneficiary does not merit granting a motion to dismiss.

c.  Indemnification

Mr. Verde's Second Amended Complaint alleges liability against Old Carco as a nominal defendant, that FTE agreed to indemnify Old Carco (and predecessors-in-interest), and that Stoneridge agreed to indemnify FTE.  Doc. No. 98 ¶¶ 50–55.  However, Stoneridge argues that Mr. Verde's indemnitor liability claims fail as a matter of law because neither he nor the Second Amended Complaint identifies any reason why he is entitled to indemnification that would be owed to Old Carco.  Doc. No. 107 at 19.  Stoneridge contends that Mr. Verde raises a new indemnity theory in his response—seeking indemnification under the indemnity provision in the Purchase Order between FTE and Stoneridge—rather than indemnity obligations owed to Old Carco.  Doc. No. 130 at 9.

Mr. Verde responds that the indemnification provision explicitly includes indemnification for a class of individuals including Mr. Verde.  Doc. No. 122 at 15 (quoting Doc. No. 107, Ex. C. ¶ 19 ("users of [FTE's] products . . . from damages . . . arising out of or alleged to have resulted directly or indirectly from the Goods.").

Stoneridge is correct that generally the Court is limited to reviewing allegations in the complaint rather than allegations raised in a response.  The complaint does not allege that Stoneridge owes indemnification to Mr. Verde directly or that he has any reason to seek indemnification from Stoneridge for claims made against him.  Although the indemnification provision in the Purchase Order plainly benefits third-parties, Mr. Verde has not alleged facts to support a direct indemnification claim against Stoneridge.

However, Mr. Verde's Complaint includes allegations against Old Carco.  The Complaint states that Old Carco went through Chapter 11 bankruptcy and is a nominal defendant.  Doc. No. 97 ¶ 37.  The complaint additionally states that the bankruptcy court entered an order that allowed new claims against Old Carco as a nominal defendant for insurance and indemnification purposes.  *Id.*  According to the Complaint, Stoneridge is liable to FTE, and FTE is liable to Old Carco for indemnification purposes.  While open questions remain as to whether Mr. Verde may step into the shoes of Old Carco and seek indemnification for his own injuries on Old Carco's behalf, that issue turns on interpretation of the bankruptcy court's order. That issue is not before the Court in determining whether Mr. Verde's claim is plausible for purposes of deciding Stoneridge's Motion.

**Arrow**

Arrow argues that Mr. Verde bases his claim against it on an alleged contractual obligation to indemnify or insure Stoneridge.  Doc. No. 108 at 8.  According to Arrow, Mr. Verde's allegation is speculative, supported only by "information and belief" of a contractual obligation owed by Arrow to Stoneridge.  *Id.* (quoting Doc. No. 97 ¶ 55).  Moreover, Arrow contends that even if such on obligation exists, Mr. Verde fails to allege any reason he is entitled to the benefit of such an agreement either as a direct indemnitee or third-party beneficiary.  *Id.*

8–9.   Additionally, Arrow contends that Mr. Verde cannot be indemnified for his own direct damages.  Doc. No. 131 at 3.

Mr. Verde responds that his complaint includes sufficient facts for a plausible claim. Doc. No. 120 at 15 (citing *Twombly*, 127 S.Ct. at 1974 (2007)).  Mr. Verde agues his claim is plausible because Stoneridge expressly agreed to indemnify users of FTE's products.  *Id.* at 16; Doc. No. 98 ¶ 54 (Stoneridge, Inc., contractually agreed to insure and/or indemnify FTE Automotive, USA, Inc. for certain liabilities arising out of the clutch interlock switches.").  Mr. Verde also believes that Stoneridge and Arrow's purchase agreement contains a similar provision based on "information and belief."  Doc. No. 120 at 16; Doc. No. 98 ¶ 55.

Mr. Verde's pleading fails to meet the standard required by *Twombly*.  Paragraph 55 of the Second Amended Complaint states "[b]ased upon information and belief, Arrow Manufacturing Co. contractually agreed to insure and/or indemnify Stoneridge Inc., for certain liabilities arising out of the clutch interlock switch and the parts therein.  Based on the allegations herein against Stoneridge, Inc., Arrow Manufacturing, Co. is liable as an indemnitor." Doc. No. 97 ¶ 55.  Mr. Verde includes no additional factual allegations to support the existence of such a contractual agreement.  At the hearing on these motions, Mr. Verde asserted only that indemnification provisions are common as additional support for existence of such an agreement.[7]   However, Mr. Verde does not allege any facts consistent with that assertion. Accordingly, Mr. Verde's allegations do not "raise a right to relief above the speculative level," and his indemnification claim against Arrow should be dismissed.[8]  *Twombly*, 550 U.S. at 555.

---

[7]  Although not considered for the purposes of deciding these Motions, Mr. Verde's counsel represented that even after deposing Arrow's representative, no evidence of such an agreement had been discovered.

[8]  However, if Mr. Verde later discovers additional facts supporting the existence of an indemnification agreement, the Court may grant leave to amend to reassert an indemnification claim.

*Personal Jurisdiction*

Arrow contends that the court may not exercise personal jurisdiction over it.  Doc. No. 108 at 3.  Arrow argues that exercising jurisdiction violates due process because Arrow manufacturing does not have sufficient minimum contacts with Texas and maintaining this suit would offend traditional notions of fair play and substantial justice.  *Id.*

Arrow filed a substantially similar motion to dismiss for lack of personal jurisdiction in Mr. Verde's other case before the Court.  6:14CV157, Doc. No. 53.  The underlying facts relating to the chain of manufacturing and the allegedly defective vehicle part are identical in both this and Mr. Verde's other case.  For the reasons stated in the Report and Recommendation (6:14CV157, Doc. No. 127) and the Order Adopting Report and Recommendation (6:14CV157, Doc. No. 140) in the other case, Arrow is properly subject to this Court's personal jurisdiction.

## CONCLUSION

Defendants' separate motions to dismiss include a myriad of issues.  Defendants have failed to show that the Court lacks subject matter jurisdiction on the ground that Mr. Verde's claims are now moot.  Additionally, the rule against claim-splitting does not warrant dismissal of Mr. Verde's case.  Moreover, Mr. Verde plead plausible claims for breach of express warranty and indemnitor liability against Stoneridge because, under Michigan law, he and other members of the putative class are intended third-party beneficiaries of the contract (Purchase Order) between FTE and Stoneridge.  However, Mr. Verde's pleading for the indemnitor liability claim against Arrow does not raise the claim above a speculative level, and thus, fails to state a claim upon which relief can be granted.

Accordingly, the Court recommends FTE's and Stoneridge's Motions to Dismiss Plaintiff's Second Amended Complaint and Petition for Class Certification (Doc. Nos. 106 &

107) be **DENIED**, and Arrow's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Doc. No 108) be **GRANTED** under Rule 12(b)(6).  Further, Mr. Verde's indemnitor liability claim against Arrow should be **DISMISSED WITH PREJUDICE**.[9]

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge.  28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Services Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**Jun 9, 2015**

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[9]  The Second Amended complaint is actually the fourth version of Mr. Verde's complaint in this case.  His previous complaints have reflected varying legal theories in response to previous rounds of motions to dismiss.  The second round of motions to dismiss was even fully briefed before Mr. Verde again sought leave to replead his claims.  With the exception of discovering new facts related to Arrow's contractual obligations discussed above, Mr. Verde's claims against Arrow should be dismissed with prejudice.